## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA ZORICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Cause No.** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| COREY ZAVORKA, and | ) | |
| | ) | |
| ROBERT M. RINCK, and | ) | |
| | ) | |
| ST. LOUIS COUNTY, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

COMES NOW Plaintiff Angela Zorich and for her cause of action against Defendants Corey Zavorka, Robert M. Rinck, and St. Louis County, states:

### INTRODUCTION

1.  On April 29, 2014 the St. Louis County Police Department's Tactical Operations Unit, at the direction and request of Defendant Rinck, stormed Ms. Zorich's home, while in full tactical attire, armed with military-grade assault weapons, and without knocking or announcing their presence or purpose prior to battering in the front door. During the raid, Defendant Zavorka, the first officer into the home, immediately shot and fatally wounded Kiya, the Zorich family dog. Ms. Zorich, along with one of her sons, was then forced to kneel at gunpoint in Kiya's blood and watch her die. When Ms. Zorich and members of her family demanded an explanation for the brutal and unnecessary killing of Kiya, who had neither acted aggressively nor had time to even bark prior to being shot, St. Louis County's officers responded with profanity and threats of further violence. As Kiya did not die immediately from her wounds, Ms.

1

Zorich begged officers to help her dog but they refused.  Ms. Zorich and her son then pleaded to at least be allowed to comfort their dying pet but St. Louis County's officers, including Defendant Rinck, again refused and Kiya was left to die afraid, in pain, and uncomforted while watching armed strangers hold her family at gunpoint just feet from her.  As Ms. Zorich watched, an officer carried Kiya's lifeless body from her house and left her on the sidewalk. Officers then removed Ms. Zorich from her home and placed her in a police car parked near where Kiya's body lie uncovered and left her to sit alone and handcuffed to stare at the lifeless body of the dog whom she had raised from a puppy.  Once Ms. Zorich and her family had been removed from the home, officers proceeded to ransack the home, opening drawers, closets, and boxes, overturning beds and throwing items from shelves onto the floor. The reason the police were at Ms. Zorich's home was to check the home for working natural gas.  Thus, the St. Louis County police officers, including Defendants Zavorka and Rinck, killed Kiya and terrorized the Zorich family over an alleged violation of the housing code.

2.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against Corey Zavorka , Robert M. Rinck and St. Louis County for violations of Ms. Zorich's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States

## JURISDICTION AND VENUE

3.     Jurisdiction is proper to this Court pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff invokes the supplemental jurisdiction of the court to hear and decide Plaintiff's claims under state law pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Defendants are located, and the events giving rise to Plaintiff's claims occurred, within the boundaries of this judicial district

## PARTIES

5.      Plaintiff Angela Zorich (hereinafter "Ms. Zorich") is a citizen of the United States of America and resident of the State of Missouri, residing within the boundaries of St. Louis County, Missouri.

6.      Defendant St. Louis County is a body politic, organized and existing pursuant to Missouri law.

7.      Defendant Corey Zavorka (herein "Defendant Zavorka") was, at all times relevant hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis County, assigned to the tactical operations unit, and acting under color of law.  Defendant Zavorka is sued in his individual capacity.

8.      Defendant Robert M. Rinck (herein "Defendant Rinck") was, at all times relevant hereto, a Missouri certified and sworn peace officer, an employee of Defendant St. Louis County, assigned to problem properties unit, and acting under color of law.  Defendant Rinck is sued in his individual capacity.

## FACTUAL BACKGROUND

### The April 25, 2014 Inspection of Ms. Zorich's Family Home

9.      At all times relevant hereto, Plaintiff Angela Zorich resided in a single-family home located in a suburban neighborhood in the South County area of St. Louis County, Missouri.

10.    On Friday, April 25, 2014, Ms. Zorich received a call at work from her son who informed her that officers of the St. Louis County Police Department had been inspecting the outside of the Zorich home and were knocking on the door.

11.    Upon leaving, the officers placed a sticker on the front window of the home marked "Problem Properties."

12.    Ms. Zorich called what she believed to be the appropriate office regarding the "Problem Properties" notice.

13.    Ms. Zorich spoke with a female employee at the office who informed Ms. Zorich that she could not find any record of problems at her address.

14.    The female employee transferred Ms. Zorich to another employee's voicemail and Ms. Zorich left a message asking for more information about the alleged violations at her home and guidance on how to remedy any perceived problems.

### *The April 28, 2014 Discussions with Officer Rehagen and Defendant Rinck*

15.    On Monday, April 28, 2014, Ms. Zorich had received no response to her voicemail and again called the same office that she had contacted on the previous Friday.

16.    An employee of that office instructed Ms. Zorich that she should contact Officer Rehagen and/or Defendant Rinck and provided telephone numbers for both individuals.

17.    Officer Rehagen and Defendant Rinck are assigned to the St. Louis County Police Department's problem property unit.

18.    As described by St. Louis County, the problem property unit investigates "poorly maintained properties" and enforces ordinances relating to "front yards overrun with vegetation, abandoned boats and scrap iron . . . houses with sagging porches and boarded-up windows . . . lots cluttered with engine blocks, bags of refuse and toppled over sheds."

4

19.   Ms. Zorich reached Officer Rehagen who informed her that an anonymous source reported that Ms. Zorich did not have working natural gas or electrical service at her address.

20.   Ms. Zorich explained to Officer Rehagen that the gas had been discontinued a few weeks prior but that the electrical service was active and working. Officer Rehagen accused her of lying about the electrical service and claimed to have verification from Ameren.

21.   At no point had there been any disruption or discontinuation in the electrical services at the Zorich home.

22.   When Ms. Zorich stated that the accusation regarding the discontinuation of the electrical service was untrue and "bullshit," Officer Rehagen abruptly hung-up on Ms. Zorich.

23.   Ms. Zorich immediately called back to continue the discussion but Officer Rehagen refused to have further conversation with her and told her to call Defendant Rinck as he was the officer in charge of the investigation.

24.   Ms. Zorich contacted Defendant Rinck as instructed by Officer Rehagen.

25.   Defendant Rinck was immediately and without cause, hostile towards Ms. Zorich.

26.   Defendant Rinck stated that he was angry because Ms. Zorich's son had used profanity towards him.

27.   Ms. Zorich indicated to Defendant Rinck that she did not really understand what was happening but wanted to cooperate and resolve the matter.

28.   Defendant Rinck explained that she would need to allow a housing inspector to access the interior of the premises and conduct an inspection.

29.   Ms. Zorich told Defendant Rinck that she would allow an inspection and asked to schedule a time when her husband could be present as she was uncomfortable being alone for

this process. She asked if she could call back the next day to arrange a proposed time when her husband could also be home.

30.     Defendant Rinck agreed that Ms. Zorich would call him the next day but indicated that the investigation would continue in the interim.

31.     Defendant Rinck did not, at any time, explain what he meant by the statement that the investigation would continue nor did he give any indication that he felt Ms. Zorich was being uncooperative or that he objected to her request to call the next day to discuss further nor that he intended to seek a warrant to search the home.

32.     As of April 28, 2014, Ms. Zorich believed that she and Defendant Rinck had reached an understanding that she and her husband would allow Defendant Rinck and an inspector into her house and that the situation would be all but resolved when she called him the next day with some proposed dates and times.

33.     Neither Officer Rehagen nor Defendant Rinck stated or gave any indication to Ms. Zorich that they were investigating her for anything more than not having a working utility.

*The April 29, 2014 Search Warrant Application.*

34.     On Tuesday, April 29, 2014 at 10:59 a.m., and despite his agreement with Ms. Zorich to speak again that day to arrange a time when Ms. Zorich and her husband could both be present to voluntarily cooperate with his request to allow an inspector to enter the home, Defendant Rinck sought a search warrant for the Zorich residence from St. Louis County Municipal Judge Robert Adler.

35.     In seeking the search warrant, Defendant Rinck alleged no more in his application than Plaintiff's home was in violation of St. Louis County building code ordinances, stating:

> ▮▮▮▮▮▮▮▮▮, St. Louis, MO is being used in violation of St. Louis
> County Revised Ordinance 1110 (Property Maintenance Code), 1102 (Electrical),

1103 (Plumbing), 1108 (Mechanical) . . .

36.     On information and belief, in seeking the warrant, Defendant Rinck gave no indication to the Court that he was seeking a warrant for anything other than to investigate alleged minor violations relating to property ordinances.

### The Raid on the Zorich Home and Killing of Kiya.

37.     In serving his administrative warrant, Defendant Rinck deployed the St. Louis County Police Tactical Response Unit and conducted a dynamic no-knock entry for alleged violations of the property code.  Defendant Rinck made the decision to secure a warrant and utilize the Tactical Response Unit to execute it despite the facts that: (1) he had spoken with Ms. Zorich a day prior and she indicated her intention to allow an inspection of the home to occur forthwith, as soon as her husband could arrange time away from his employment; (2) he and other officers had felt safe enough to walk around the exterior and inspect the house without fear or incident of violence just a few days prior; and (3) any alleged violations were demonstrably minor and did not pose a risk to Ms. Zorich, to her family or to the public.

38.     Sometime around noon on Tuesday, April 29, 2014, at least eight (8) uniformed and armed St. Louis County Police Department patrol officers along with at least five (5) St. Louis County Police Department tactical officers in full tactical attire and armed with Rock River Arms M-4 rifles gathered in Ms. Zorich's suburban neighborhood to serve the administrative warrant to check whether her home had working gas.

39.     At approximately 12:41 p.m., the Tactical Response Unit conducted its dynamic no-knock entry into the home.

40.     The administrative search warrant was based on alleged violations of the housing code. There was no urgency or exigency that required the issuance of a warrant or its immediate execution.

41.     Ms. Zorich was sitting in her kitchen with Bridget Haman, the mother of her grandson, when the raid began.

42.     From the kitchen, Ms. Zorich heard a loud boom followed instantaneously by three quick pops. Following the three pops, she then heard multiple voices shouting at once and yelling over each other. She believes that some of them may have yelled "Search warrant." and/or "St. Louis County Police."

43.     The boom was the sound of tactical unit battering in her front door and the three pops were the three shots that Defendant Zavorka immediately fired into Kiya, the family dog, upon entry into the home.

44.     At the moment she was shot, Kiya was sitting no more than three (3) to four (4) feet from Ms. Zorich's son, Joseph, who was holding his 5-month-old son, Chase (Ms. Zorich's grandson), and talking with his brother, Isaiah (Ms. Zorich's youngest son) while they played with the baby. Further, Defendant Zavorka shot Kiya as she was lying next to and partly on top of a play tent belonging to Ms. Zorich's six (6) year-old daughter. Ms. Zorich later found a shell casing inside the tent.

45.     Kiya had no time to do more than turn towards the noise, much less act aggressively or even bark, before being immediately and mortally wounded by bullets from Defendant Zavorka's M-4.

46.     Kiya's bladder and bowels released and she fell to the floor dying in her own blood and waste as the remainder of the tactical unit entered the house.

47.     On information and belief, Defendant Zavorka was the only officer who had made entry into the home at the moment the shots were fired.

48.     Ms. Zorich told Ms. Haman to put her hands in the air and walk out very slowly so the police wouldn't shoot them.

49.     Upon exiting the kitchen, Ms. Zorich saw an officer with a weapon against her son Isaiah's forehead and heard the officer state: "One word, Motherfucker, and I'll put three in you." On information and belief, the officer who threatened Ms. Zorich's son, Isaiah, was Defendant Zavorka.

50.     Confronted with this horror and terror, Ms. Zorich involuntarily urinated on herself.

51.     Ms. Zorich saw her son Joseph holding his son -- her grandson -- on his lap while an officer pointed a rifle at Joseph and her grandson. Her grandson was screaming and Joseph was attempting to hold him while raising an arm in the air.

52.     Ms. Zorich turned towards Kiya, her dog. Kiya was laying on the floor in her own waste and blood struggling to breathe. She had a gaping hole in her chest. Kiya was still breathing, and Ms. Zorich began begging for someone to help Kiya. None of the St. Louis County Police officers present took any steps to help Kiya.

53.     Ms. Zorich heard someone, possibly the friend of Joseph's who was present in the home, ask the officers to please shoot Kiya again and in the head so she wouldn't have to lay there and suffer. None of the St. Louis County Police officers present took any steps to end Kiya's suffering and instead just allowed her to lie there and die in agony.

**The Questioning and Arrest of Ms. Zorich.**

9

54.     An officer led Ms. Zorich over to Kiya's body, who was still struggling to breathe.

55.     As the other persons present in the home were led out, an officer forced Ms. Zorich to her knees next to her son Isaiah, who was also on his knees, and just a few feet from where Kiya lay dying.

56.     Isaiah asked if he could hold Kiya and comfort her as she died but the St. Louis County Police officers refused.

57.     While Ms. Zorich was on her knees next to her son and her dying dog, an officer, who Ms. Zorich believes to have been Defendant Rinck, squatted down over Kiya.

58.     Defendant Rinck positioned himself such that Ms. Zorich had to look at her dying pet to see and talk to him. Defendant Rinck was unmoved by the suffering of the dying dog in front of him.

59.     Ms. Zorich asked the officer "Why did you shoot her? She did nothing wrong. She didn't even bark at you."

60.     While squatting over the dying Kiya, Defendant Rinck calmly stated that they were there because the natural gas had been turned off.

61.     Ms. Zorich grew more upset and kept asking for someone to help Kiya while Defendant Rinck continued to talk about the discontinued natural gas service.

62.     Defendant Rinck became frustrated that Ms. Zorich would not respond to his questions about the natural gas service and instead kept talking about Kiya.  At that point, Defendant Rinck angrily remarked "Oh my god, can we get animal control in here?"

63.     A woman in uniform, believed to be the animal control officer, entered with a leash but stopped abruptly when she saw Kiya lying on the floor.  Ms. Zorich looked at her and

stated "She's dead. They shot her for no reason. They are here because I didn't pay my gas bill on time and killed her for no reason."

64. The uniformed woman asked for a blanket to use to carry Kiya's lifeless body from the home. An officer reached for Ms. Zorich's grandson's baby blanket. Ms. Zorich's son, Joseph, told them not to touch it. The officer appeared angry and simply ordered the woman to get the body out of the house. The woman picked up Kiya by her front and back legs and carried her outside and laid her on the sidewalk.

65. An officer pulled Ms. Zorich to her feet and led her outside to her driveway.

66. As she was led out of her home, an officer said "Well, that's what they get."

67. As Ms. Zorich was lead down her driveway towards a patrol car, she observed tactical officers celebrating, patting each other on the back, and high-fiving in her front yard.

68. Defendant Rinck again approached Ms. Zorich and again began speaking to her about the reason for the search being the discontinued natural gas service. Ms. Zorich said "I can't believe you did this. We just spoke yesterday." Defendant Rinck grew agitated and stated "Forget it, I'm done, get her out of here."

69. Ms. Zorich saw Officer Jacobsmeyer, whom she recognized from previous meetings. She said to Officer Jacobsmeyer "They killed Kiya." Officer Jacobsmeyer responded "Angie [a name used only by Ms. Zorich's friends], I don't know what is going on. They just called me to pick you up."

70. Ms. Zorich was handcuffed and placed in the backseat of a police car. The car was parked near Kiya's dead body, which was still lying uncovered on the sidewalk and Ms. Zorich was left there alone in the police car to stare at Kiya's lifeless body.

71.     From the car, Ms. Zorich then watched as Kiya's lifeless body was placed in the back of a truck where a yellow tarp was thrown over her.  The animal control officer led Ms. Zorich's two other dogs out and placed them in the back of the same truck that held Kiya's body. The other dogs were visibly distressed by the sight and smell of their dead companion's body.

*Kiya*

72.     Kiya was a four (4) year-old American pitbull who had been part of the Zorich family since she was about four (4) weeks old.

73.     Kiya lived at Ms. Zorich's home and was owned and cared for by Ms. Zorich.

74.     Kiya had never shown aggression to any person.

75.     Kiya was a playmate and companion to Chase, Ms. Zorich's five (5) month-old grandson, and Alannah, her six (6) year-old daughter, and never showed any aggression towards the children.

76.     Officer Jacobsmeyer had previous encounters with Kiya.  The family had told him that Kiya was not aggressive and didn't bite.  On at least one occasion, Officer Jacobsmeyer had petted Kiya and had friendly interactions with her.

77.     Kiya did not have time to act aggressively towards nor even bark at Defendant Zavorka before he immediately fired his assault rifle within an instant of the door being violently battered open.

78.     Defendant Rinck, Defendant Zavorka, and the other responding officers knew or should have known that Kiya was present at the Zorich family home at the time of conducting their dynamic no-knock entry.  Officer Jacobsmeyer had previously been at the home and knew that Kiya lived there.  Defendant Rinck noted in his police report that he was aware that the Zorichs had at least one dog.  Defendant Rinck and/or other St. Louis County Police Department

12

officers arranged to have officers of St. Louis County Animal Control on scene prior to the start of the raid.

### *The Search of the Zorich Residence.*

79.     As Ms. Zorich sat in the backseat of the patrol car, she observed officers entering her home carrying metal detectors.

80.     After Ms. Zorich was able to return to her home following her detention and questioning at a St. Louis County Police Station, she and her family discovered that closets had been searched, drawers and boxes appeared to have been opened, beds were overturned and property that had been stored on shelves was thrown to the floor

81.     The St. Louis County Police Department and its officers could have no reasonable belief that any of these closets, drawers, or boxes could contain any evidence relating to violations of the housing code.

82.     On information and belief, the St. Louis County Police Department and its officers did not find any illegal contraband, drugs, or firearms in the Zorich family home.

83.     The warrant was issued for a search of the home premised on Defendant Rinck's attestation that his purpose was to look for housing code violations.

### *The Questioning by Defendant Rinck and Inspector Cross at the Police Station.*

84.     While at the police station, Ms. Zorich was taken from her holding cell and led to an interrogation room.  Lieutenant Hoots entered and stated to Ms. Zorich: "You need to listen to me, we did not do this." Ms. Zorich's was confused by this statement and based on her best information and belief thinks that Lieutenant Hoots was attempting to place the blame on the Tactical Operations Unit and not the officers from his precinct.  Following this conversation, Ms. Zorich was returned to her holding cell.

85.     A short time later, Ms. Zorich was again taken from her holding cell and led a few feet away from the cell.  Defendants Rinck and Housing Inspector Cross approached with approximately five (5) or six (6) other officers.  Defendant Rinck held a piece of paper just inches from Ms. Zorich's face and stated "We have condemned your house.  It is unsanitary and uninhabitable."  Housing Inspector Cross then shouted "And there's more coming for your deck."

86.     Upon her release, Ms. Zorich was given an "Order to Vacate" signed by Housing Inspector Cross.

87.     Following the incident, Ms. Zorich received a "Notice of Violation," signed by Housing Inspector Cross and which indicated that the document was from St. Louis County Department of Public Works.  This notice specified citations for: (1) "Siding, Missing or Deteriorated," (2) "Guardrail, Deteriorated or Missing," (3) "Screens, Torn or Missing," (4) "Window Glass, Broken," (5) "Deck, Porch or Patio, Deteriorated," and a handwritten notation stating "Secure Rear Deck Door as not to open Repair are [*sic.*] Remove Rear Deck if Rebuilding permits required."

88.     After the raid, Ms. Zorich was left homeless for approximately one (1) month.

## CAUSES OF ACTION
### COUNT I

***UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ZAVORKA***

89.     Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 88 as if set forth fully herein.

90.     The killing of a family pet by law enforcement officers constitutes a seizure and is subject to provisions of the Fourth Amendment to the Constitution of the United States.

91.     Defendant Zavorka's actions in the killing of Kiya, alone and together and in concert with others, were unreasonable and in violation of Ms. Zorich's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

92.     As a direct and proximate result of the conduct of Defendant Zavorka, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

93.     The acts of Defendant Zavorka were intentional, wanton, malicious, oppressive, reckless, outrageous, and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Zavorka.

94.     As a result of Defendant Zavorka's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Zavorka in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT II

### *UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK*

95.     Ms. Zorich re-alleges and incorporates by reference the factual allegations contained in paragraphs 5 through 88 as if set forth fully herein.

96.     The killing of a family pet by law enforcement officers constitutes a seizure and is subject to the provisions of the Fourth Amendment to the Constitutions of the United States.

97.     Defendant Rinck's actions in the killing of Kiya, alone and together and in concert with others, were unreasonable and in violation of Ms. Zorich's rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

98.     It was unreasonable for Defendant Rinck to seek a warrant for an alleged housing code violation when Ms. Zorich had agreed to grant access for an inspection.

99.     It was unreasonable for Defendant Rinck to call upon the Tactical Unit to execute the warrant. Defendant Rinck was aware of the tactics that would be employed by the Tactical Unit officers, including making violent entry. Defendant Rinck knew that there was a family canine in the home and that the pet would be killed upon the Tactical Unit entering. Defendant Rinck knew that a young child resided in the home and that there were other occupants of the home who would be present. Defendant Rinck knew of the trauma experienced by a person who was present in a home targeted with a Tactical Unit dynamic no-knock entry.

100.     As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; loss of Kiya and her companionship; great fear for her safety and that of

her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

101.    The acts of Defendant Rinck described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Rinck.

102.    As a result of Defendant Rinck's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT III

### *UNLAWFUL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK*

103.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 5 through 88 as if set forth fully herein.

104.    As described herein, Defendant Rinck, while acting under color of law, acting alone and acting together and in concert with others, deprived Ms. Zorich of her rights, privileges, and immunities as secured by the Constitution of the United States of America in the manner which obtained and executed a search warrant for Ms. Zorich's residence, authorizing

and directing a tactical response unit to execute the search warrant, and authorizing and directing the search in such a manner that exceeded the scope and authority of the warrant.

105.    As described herein, Defendant Rinck's actions were unreasonable and in violation of Ms. Zorich's rights as secured by the Fourth Amendment to the Constitution of the United States.

106.    Defendant Rinck was the officer in charge of the investigation of alleged property and housing code vioaltions, including the disconnection of the natural gas service, at Ms. Zorich's home and requested and secured the administrative warrant authorizing the search thereof.

107.    Defendant Rinck knew that there were possibly small children in the home.

108.    Defendant Rinck knew that the search of the home would reveal no evidence of discontinued gas service because Ms. Zorich had conceded the gas had been shut off.

109.    Defendant Rinck knew that a search warrant was unnecessary because Ms. Zorich had told him that she would permit the search.

110.    Defendant Rinck knew that the dynamic entry by the tactical unit was unnecessary and that it would be a traumatic event for all occupants.

111.    Defendant Rinck knew that a search of private storage areas, including drawers, boxes, closets and shelves would reveal no evidence of any housing code violation, yet he entered the home and either participated in, directed or failed to stop the unlawful search of the premises.

112.    Despite Defendant Rinck's knowledge of the foregoing facts and despite the unreasonableness of the dynamic entry and all that followed, Defendant Rinck orchestrated the events that followed.

113.    In so doing, Defendant Rinck violated the rights of Ms. Zorich that are secured by the Fourth and Fourteenth Amendments to the United States Constitution.

114.    As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her safety and that of her family and dog; pain of the mind as well as the body; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

115.    The acts of Defendant Rinck described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Zavorka.

116.    As a result of Defendant Rinck's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT IV

### *UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES COGNIZABLE UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT ROBERT M. RINCK*

19

117.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 5 through 88 as if set forth fully herein.

118.    Ms. Zorich engaged in speech that is protected under the First Amendment.

119.    Ms. Zorich and her residence were associated with persons who engaged in speech that is protected under the First Amendment.

120.    Ms. Zorich refused to take action against persons with whom she was associated with for engaging in speech that is protected under the First Amendment.

121.    Defendant Rinck secured the warrant and orchestrated the dynamic entry by the St. Louis County Tactical Unit because he believed that one or more children of Ms. Zorich had previously cursed at Defendant Rinck and that Ms. Zorich had previously cursed at Officer Rehagen.

122.    Ms. Zorich's and her children's protected speech and Defendant Rinck's desire to suppress and chill that speech was a substantial or motivating factor in Defendant's Rinck's obtaining a search warrant for Ms. Zorich's home, deploying the tactical response unit, and the killing of Ms. Zorich's dog.

123.    As a direct and proximate result of the conduct of Defendant Rinck, Ms. Zorich has suffered injuries and damages, including but limited to: infringements and deprivations of her constitutional rights; great fear for her safety and that of her family and dog; pain of the mind; fear, apprehension, depression, anxiety, loss of enjoyment of life, loss of faith in her society, and consternation.

124.    The acts of Defendant Rinck described herein were undertaken intentionally, wantonly, maliciously, recklessly, outrageously and/or for purposes of the oppression of and/or

callously indifferent to the rights of Ms. Zorich, thus entitling her to an award of punitive damages against Defendant Rinck.

125.    As a result of Defendant Rinck's unlawful actions and infringements of her protected rights, Ms. Zorich has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor under 42 U.S.C. §§ 1983 and 1988 against Defendant Rinck in his individual capacity and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just, appropriate, and consistent with the important purposes of 42 U.S.C. § 1983.

## COUNT V

### CONVERSION COGNIZABLE UNDER MISSOURI COMMON LAW AGAINST DEFENDANT ZAVORKA

126.    Ms. Zorich re-alleges and incorporates by reference the factual allegations as contained in paragraphs 5 through 88 as if set forth fully herein.

127.    Ms. Zorich was the lawful owner of Kiya.

128.    Defendant Zavorka took possession and control of Kiya by intentionally killing her.

129.    As a result, Defendant Zavorka deprived Ms. Zorich of her right to possession of Kiya.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor against Defendant Zavorka as to her Count V for conversion and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just and appropriate.

21

## COUNT VI

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COGNIZABLE UNDER MISSOURI COMMON LAW
### AGAINST DEFENDANTS ZAVORKA AND RINCK

130.    Ms. Zorich re-alleges and incorporates by this reference the factual allegations contained in paragraphs 5 through 88 as if fully set forth herein.

131.    Defendant Rinck's authorization and deployment of the tactical operations unit to conduct a dynamic no-knock entry to serve an administrative search warrant to check Ms. Zorich's home for working natural gas and/or alleged violations of housing ordinances was extreme and outrageous.

132.    Defendant Rinck's forcing Ms. Zorich to kneel next to her dying pet to question her about why she hadn't paid her natural gas bill was extreme and outrageous.

133.    Defendant Rinck's having Ms. Zorich detained in a police car just feet from where the body of her dead pet lay uncovered for over an hour was extreme and outrageous.

134.    Defendant Zavorka's shooting and killing of Ms. Zorich's pet without justification or excuse was extreme and outrageous.

135.    Defendant Zavorka's placing an assault rifle to the forehead of Ms. Zorich's son and threatening to "put three in you too" in front of his mother was extreme and outrageous.

136.    In undertaking their actions, Defendants Rinck and Zavorka acted intentionally and/or recklessly.

137.    In undertaking their actions, Defendants Rinck and Zavorka knew that their actions would result in the infliction of emotional distress upon Ms. Zorich and this was the sole motivation behind Defendants Rinck and Zavorka's actions.

138.     The conduct of Defendants Rinck and Zavorka complained of herein was so outrageous in character and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

WHEREFORE Plaintiff Angela Zorich respectfully prays that this Court enter judgment in her favor against Defendants Zavorka, Rinck as to her Count VI for intentional infliction of emotional distress and award her any and all compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other such relief to which she is entitled and that this Court deems just and appropriate.

## COUNT VII

### *RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT ST. LOUIS COUNTY*

139.     Plaintiff incorporates by this reference the allegations in paragraphs 5 through 138 as though fully set forth herein.

140.     Defendant St. Louis County is directly liable for the constitutional violations that Plaintiff Zorich suffered as St. Louis County hired and retained Defendants  Zavorka and Rinck who, acting within the course and scope of their employment, power and authority, violated the constitutional rights of Mr. Zorich under the First, Fourth and Fourteenth Amendments to the United States Constitution.

141.     Plaintiff acknowledges that *respondeat superior* liability is not a basis for liability of Defendant St. Louis County under existing law.  Plaintiff submits that there exists a good faith argument for the modification of that rule based on the dissenting opinion of Justice Breyer in *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997), the dissenting opinion of Justice Stevens in *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), and based upon the literature addressing this issue.

23

142.   As a direct and proximate result and cause of the conduct of the employees, agents and servants of Defendant St. Louis County, acting within the course and scope their employment, Plaintiff suffered injuries and damages.

143.   If Plaintiff prevails, she is entitled to an award of attorneys' fees pursuant to 42 U.S.C.§1988.

WHEREFORE, Plaintiff prays for judgment against Defendant St. Louis County, for compensatory damages, and for attorneys' fees and the costs of this litigation, and for other relief as is appropriate under the law.

Respectfully submitted,

THE RYALS LAW FIRM, P.C.

_____
Stephen M. Ryals, MO34149
P.O. Box 11065
Ferguson, Missouri 63135
(314) 862-6262, *phone*
(314), 526-0061*facsimile*
ryals@rblawstl.com, *email*

**CHACKES, CARLSON & GOROVSKY LLP**

*/s/ Kenneth M. Chackes____*
Kenneth M. Chackes, MO27534
Daniel J. Kolde, MO64965
906 Olive Street, Suite 200
St. Louis, Missouri 63101
(314) 872-8420, *phone*
(314) 872-7017, *facsimile*
kchackes@cch-law.com, *email*
dkolde@cch-law.com , *email*

24